IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE R.H. DONNELLEY CORP. ERISA LITIGATION, | ) ) | Case No. 09 C 7571 Hon. Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Cheryl Zdziarski and Zachary Glennon, former employees of R.H. Donnelley Corp. (the "Company") and participants in the R.H. Donnelley 401(k) savings plan (the "Plan") have brought a three count putative class action complaint pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109 and 1132, alleging that defendants breached their fiduciary duties to the Plan with respect to the Plan's holdings of Company stock. Named as defendants are: Michael P. Connors, a member of the Company's Board of Directors ("Board") during the alleged class period and a member of the Board's Compensation and Benefits Committee; Thomas J. Reddin, a member of the Board and until approximately February 2008 and a member of the Compensation and Benefits Committee; Barry Lawson Williams, a member of the Board and Chairman of the Compensation and Benefits Committee through 2007; Alan M. Shultz, a member of the Board who succeeded Williams as Chairman of the Compensation and Benefits Committee; and David C. Swanson, Chairman of the Board and Chief Executive Officer of the Company, who allegedly had authority to appoint and remove members of the Compensation and Benefits Committee. The complaint refers to Connors, Reddin, Williams, Schultz and Swanson collectively as the "Director Defendants."

Also named as defendants are the Employee Benefits Committee ("Benefits Committee") and its members Robert Bush, Amy Clark, Mark Hianik, Donna Tikkanen-Davis, and Gretchen Zech (the "Benefit Committee Defendants"); and the Asset Management Committee and its

members Jenny L. Apker, Bush, Steven Blondy (also Executive Vice-President and Chief Financial Officer of the Company), Sylvester Johnson, Hianik, and Barry Sauder, (the "Asset Management Committee Defendants").

Count I alleges that all defendants breached their fiduciary duties to "prudently and loyally manage the Plan's assets." Count II alleges that all defendants breached their duty to avoid conflicts of interest. Count III alleges that the Director Defendants and Swanson (who plaintiffs characterize as the "Chairman Defendant") breached their duties to monitor the other fiduciaries (the Asset Management and Benefits Committee Defendants) and to provide those fiduciaries with accurate information. Defendants have moved to dismiss a portion of Count I and all of Counts II and III, and have moved to strike plaintiffs' jury demand. For the reason explained below defendants' motion to dismiss is granted in part and denied in part. The motion to strike the jury demand is granted.

## BACKGROUND

Plaintiffs are two former employees of the Company who were participants in the Plan during the proposed class period of July 26, 2007 to January 29, 2010. Throughout that period the Company sponsored a 401(k) Defined Contribution Plan for eligible employees. The Plan was funded through a combination of employee and Company contributions, with Plan participants responsible for selecting how to allocate those contributions from among several different investment options. One such option was the R.H. Donnelley Common Stock Fund (the "Stock Fund") which, as its name suggests and in accordance with the Plan, was invested in Company stock. Prior to January 1, 2009, participants could invest up to 50% of their Plan

2

accounts in the Stock Fund, and could freely transfer their investments among various investment options at any time.

According to the complaint, during the period in question the Company described itself as a provider of print and interactive marketing solutions. It is perhaps best know for publishing <u>The Yellow Pages Telephone Directory</u>, which allows businesses to provide to the public basic contact information, including name, address and telephone number. In 2003 the Company began to acquire Yellow Page publishing businesses, including Sprint Publishing and Advertising, a subsidiary of Sprint Corp. In 2004 the Company acquired AT&T's interest in the directory advertising businesses in Illinois and Northwest Indiana. In January 2006 the Company acquired Dex Media from Quest Communications International Inc. As a result of these acquisitions, the Company's long term debt grew from $2.1 billion at year-end 2002 to $10 billion at year-end 2007.

The Company would, as a matter of course, extend credit to its customers, many of which were small to mid-size companies. The Company's products and services largely involved a 12 month business cycle, and in July 2007, the Company reported that bad debt expense represented 3% of its revenue. By June 2009, bad debt represented 7.6% of the Company's revenue. Nonetheless, throughout the class period the Company had continued to publically tout its strong and stable business and described itself as "very recession resistant." Based on these statements, analysts issued favorable ratings and Plan participants maintained their holdings in the Stock Fund. Plaintiffs' claim that defendants misled them by misrepresenting its bad debts on Company financial statements, blaming the deterioration in its revenue on short term economic problems, down-playing the role of liquidity and analysts' ratings, and announcing unrealistic

3

financial projections. Plaintiffs base their claims on statements made in the Company's financial quarterly report, conference calls, and press releases and Securities Exchange Commission ("SEC") filings made by certain defendants as required by the securities laws. The Company filed for bankruptcy on May 28, 2009. It emerged from bankruptcy protection on January 29, 2010, and is now known as Dex One Corporation.

## DISCUSSION

### Motion to Dismiss

Defendants have moved to dismiss a portion of Count I and all of Counts II and III under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Such a motion challenges the legal sufficiency of the complaint, not its merits. Autry v. Northwest Premium Services, Inc., 144 F.3d 1037, 1039 (7th Cir. 1998). The court accepts as true all of the well-pleaded factual allegations and draws all reasonable inferences in plaintiffs' favor. McMillian v. Collection Prof's, Inc., 455 F.3d 754, 758 (7th Cir. 2006). The complaint must put defendants on fair notice of what the claim is and the grounds on which it rest. The factual allegations must be sufficient to state a claim that is plausible on its face, rather than merely speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A claim is facially plausible when it allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

### Count I

Count I alleges generally that the Director Defendants, the Benefits Committee Defendants, and the Asset Management Defendants breached their fiduciary duties to "prudently and loyally manage the Plan's assets." According to the complaint, defendants breached those

duties in three separate ways: (1) by continuing to offer R.H. Donnelley common stock as a Plan investment option when it was imprudent to do so; (2) by failing to provide complete and accurate information to Plan participants regarding the Company's financial condition and the prudence of investing in Company stock; and (3) by maintaining the Plan's pre-existing significant investment in Company equity when the Company stock was no longer a prudent investment for the Plan.[1] Defendants challenge theory number 2, arguing that the complaint fails to allege: (1) any statements made to Plan participants by defendants in their capacity as Plan fiduciaries; (2) any actionable omission by defendants; (3) any actual false statements made by defendants in any capacity; and (4) that defendants acted with intent to deceive Plan participants.

ERISA fiduciaries have a duty not to mislead Plan participants or misrepresent the terms or administration of the Plan. Mondry v. American Family Mut. Insurance Co., 557 F.3d 781, 807 (7th Cir. 2009). These duties apply, obviously, only to those who are, in fact, ERISA fiduciaries, In re: Citigroup ERISA Litig., 2009 WL 2762708 at *23 (S.D. NY 2009), and under ERISA fiduciaries may wear different hats. Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers or even as plan sponsors. Pegram v. Herdrich, 530 U.S. 211, 225 (2000). Fiduciaries are required, however, to wear only one hat at a time, and to wear the fiduciary hat when making fiduciary decisions. Id. (citing Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443-44 (1999)). Because fiduciaries may wear two hats, in every case charging breach of ERISA fiduciary duties

---

[1] It is unclear why plaintiffs did not present each of these three theories in separate counts since they appear to be based on different factual allegations. Indeed, nothing about the complaint is clear. It is a 76 page, 240 paragraph document that reads more like a legal brief, complete with statutory and case citations to authority, than a short plain statement of the claims as required by Fed. R. Civ. P. 8.

"the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interests, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." Pegram, 530 U.S. at 226.

In the instant case, the alleged misstatements were all contained in disclosure statements and reports filed with the SEC as required by law, or in other disclosures made to the public at large. Defendants argue that as a matter of law these filings and disclosure statements were made by defendants in their corporate capacity while wearing their corporate hats, and not as ERISA fiduciaries. The court agrees.

Despite plaintiffs' "on information and belief" allegation that the Plan's Summary Plan Description ("SPD") incorporates by reference the SEC filings, it simply does not. Therefore Hill v. Tribune Company, 2006 WL 2861016 at *19 (N.D. Ill. 2006), in which the SPD incorporated the SEC filings and thus formed the basis for the conclusion that such statements were made in the fiduciary's ERISA capacity, lends no support to plaintiffs. The instant filings were not specifically incorporated into any Plan documents, and no Plan documents even encouraged participants to review corporate filings. The instant filings were thus made solely by defendants in their corporate capacities and cannot form the basis for ERISA liability. See Lingis v. Motorola, Inc., 649 F. Supp.2d 861, 875 (N.D. Ill. 2009) (Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently do not violate ERISA if the filings contain misrepresentations.).

Plaintiffs argue that the Company filed a Form S-8 two years prior to the start of the Plan that itself incorporated all future Company filings. A Form S-8 is an SEC corporate filing that,

6

unlike an SPD, is not required to be sent to each Plan participant. It is a statement filed with the SEC for the purpose of registering employer securities under an employee benefit plan, and is required to incorporate future filings. In re Reliant Energy ERISA Litig., 336 F. Supp.2d 646, 652 (S.D. Tx. 2004). It is a corporate filing made by the company on behalf of the plan, and in so filing the company was "discharging its corporate duties under the Securities laws, and was not acting as an ERISA fiduciary." Lingis, 649 F. Supp.2d at 875; Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 257 (5th Cir. 2008).

Consequently, while there may be a split among courts as to whether incorporated SEC filings can constitute fiduciary speech, see In re General Growth Properties, Inc., 2010 WL 1840245 at *8-9 (N.D. Ill. 2010), no court has held that unincorporated filings are made in a fiduciary capacity. Accordingly, Count I fails to state a claim for breach of fiduciary duty based on the SEC filings.

Plaintiffs also allege that defendants made misleading statements in various public disclosures such as financial reports, public statements, Company conference calls and press releases. Again, the complaint contains no factual allegations that would support a conclusion that any defendant was acting as an ERISA fiduciary when making the alleged public disclosures. Accordingly, plaintiffs' claims for breach of fiduciary duty based on allegedly misleading statements made in such public disclosures are dismissed.

Finally, plaintiffs allege that defendants have failed to disclose to Plan participants that the Company was in serious financial distress and concealed the truth about its financial condition. Defendants acknowledge that fiduciaries have a duty to disclose material information, Mondry, 557 F.3d at 807, but argue that they had no obligation to "share specific information

7

about investments offered by the Plan," one of which was the Stock Fund. See Brieger v. Tellabs, Inc., 629 F. Supp.2d 848, 866 (N.D. Ill. 2009).

As Judge Pallmeyer noted in Lingis,"[w]hile the duty of loyalty ERISA fiduciaries owe beneficiaries clearly encompasses a duty not to lie, the degree to which that duty imposes an affirmative obligation to disclose material information is unclear." 649 F. Supp.2d at 875-76. The Supreme Court has declined to "reach the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative." Verity Corp. v. Howe, 516 U.S. 489, 506 (1986). Recognizing that requiring disclosure of non-public information to plan participants when the information has not been provided to the market generally would create a tension with the securities laws and possibly "run afoul of the insider trading laws," Judge Pallmeyer rejected the argument that the defendants had an affirmative duty to disclose such information. Lingis, 649 F. Supp.2d at 876-77; but see Brieger, 629 F. Supp.2d at 866 (rejecting the argument that fiduciaries can avoid disclosing material information out of fear of violating securities laws).

The closest the Seventh Circuit has come to this issue was in Baker v. Knigley, 387 F.3d 649, 661-62 (7th Cir. 2004), where it held,

> vague allegations of `assessments' of the general economic well-being of an employer, especially in the absence of specific allegations of intent to deceive, are not sufficient to state a claim for breach of fiduciary duty under ERISA. . . .[T]he failure to disclose the likelihood of bankruptcy and plan termination may have been an innocent byproduct of the company's efforts to keep from its creditors and competitors information it had no duty to disclose. Furthermore, if we were to create a new fiduciary duty, as plaintiffs request, we run the risk of disturbing the carefully delineated corporate disclosure laws. We decline to do so here, where there is no well-pleaded allegation of intent to deceive the plan participants.

Although not directly on point, the import of <u>Baker</u> is clear. The decision to require plan fiduciaries to disclose to participants information that can lawfully be kept from the public at large should be left to Congress, particularly when there are no well-pleaded allegations of intent to deceive the plan participants. As in <u>Lingis</u>, "the harm that plaintiffs contend was the result of lack of disclosure was in fact the result of misleading the marketplace generally rather than misleading ERISA beneficiaries specifically . . .." <u>Lingis</u>, 649 F.2d at 876. Consequently, the court dismisses that portion of plaintiffs' claims in Count I of breach fiduciary duty based on failure to disclose material information.

**Count II**

Count II alleges that all defendants breached their duties to avoid conflicts of interest. The complaint fails to differentiate between defendants, fails to identify the conflicts at issue, and fails to indicate which defendants made any specific decisions that were not motivated in the best interest of the Plan. At most, the complaint alleges generally that certain defendants were compensated in the form of stock awards and stock options, meaning their compensation was tied to the price of Company Stock. This, according to plaintiffs, left certain defendants in the position of potentially having to choose between their own interests as executives and stockholders in the interest of Plan participants.

Company-based stock compensation alone is insufficient to give rise to a conflict of interest. <u>In re: Citigroup ERISA Litigations</u>, 2009 WL 27662708 at *26 (S.D. NY 2009). To state an actual conflict of interest, plaintiffs must at least set out which defendants made decisions that were not in the best interest of Plan participants. <u>Id</u>. Pleading that certain defendants had a <u>potential</u> conflict does not state a claim that is plausible on its face, but rather

9

one that is merely speculative. Bell Atlantic, 550 U.S. at 555. Accordingly, defendants' motion to dismiss Count II is granted.

**Count III**

Count III alleges that Swanson (the Chairman Defendant) and the other Director Defendants failed to adequately monitor and inform the other Plan fiduciaries by failing to ensure that those fiduciaries had access to knowledge regarding the Company's business problems and by failing to ensure that the monitored fiduciaries completely appreciated the huge risk participants took in investing significant amounts of their retirement savings in Company Stock. Defendants have moved to dismiss Count III, arguing that because the Board had no power other than to appoint and remove those who served as Plan fiduciaries, the Board's obligations are limited only to the power of appointment and removal. See Crowley v. Corning, Inc., 234 F. Supp.2d 222, 229 (W.D. NY 2002).

The Seventh Circuit has indicated that fiduciaries charged with appointing and removing committee members may have a duty to monitor the committee's actions. Baker, 387 F.3d at 663 (citing Leigh v. Engle, 772 F.2d 113, 133-35 (7th Cir. 1984). Accordingly, defendants' motion to dismiss Count III is denied.

**Defendants' Motion to Strike Jury Demand**

Defendants have moved to strike plaintiffs' demand for a jury trial on the grounds that ERISA does not grant a right to a jury and that plaintiffs have no right to a jury under the Seventh Amendment. The court agrees.

There can be no doubt that in the Seventh Circuit there is no right to a jury trial under ERISA. See George v. Kraft Foods Global Inc., 2008 WL 780629 at *2 (N.D. Ill. 2008) (and

cases cited therein). Plaintiffs do not dispute that ERISA provides no right to a jury, but argue that they are entitled to a jury under the Seventh Amendment because they are suing for money damages on behalf of the Common Stock Fund, which in turn would be distributed to the individual class members as benefits. This precise argument was raised by the plaintiffs in George, and rejected in a well-reasoned opinion by Judge Schenkier. Id. at *3-5. This court is unaware of any decision within the Seventh Circuit authorizing a jury trial in an action brought under § 502 of ERISA. See, Id.(compiling cases).

Harzewski v. Guidant Corp., 49 F.3d 799 (7th Cir. 2007), is of no help to plaintiffs. As plaintiffs admit, Harzewski acknowledges that "ERISA does not say that a plan participant has a right to sue a plan fiduciary for damages and the Supreme Court . . . has refused to allow courts to read such a right into the statute." Id. at 804. Plaintiffs' attempt to characterize their suit as one by the Plan for money damages that will then be distributed to plaintiffs as benefits is misleading. ERISA does not authorize suits for damages; it authorizes suits for monetary relief in the form of benefits owed under the Plan documents. Id. That plaintiffs purport to seek compensatory relief on behalf of the Plan as a whole does not alter the fact that what they really seek is to force defendants to restore to the Plan the benefits allegedly owed to the individual plaintiffs. If plaintiffs win their case by obtaining a money judgment, their receipt of the money will constitute a receipt of a plan benefit. Id. This is a suit brought under ERISA for ERISA benefits and there is no right to a jury trial. Accordingly, defendants' motion to strike plaintiffs' jury demand is granted.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted as to the allegation in Count I that defendants breached a fiduciary duty by failing to provide complete and accurate information to Plan participants, granted in total as to Count II and denied as to Count III. Defendants' motion to strike plaintiffs' jury demand is granted.

**ENTER:** **January 10, 2011**

**Robert W. Gettleman**
**United States District Judge**